UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**EDDIE I. SIERRA**,

       Plaintiff,

vs.

**HYUNDAI MOTOR AMERICA**
**CORPORATION, a foreign for-profit**
**corporation,**

       Defendant.

_____/

## COMPLAINT

Plaintiff EDDIE I. SIERRA, through undersigned counsel, sues Defendant HYUNDAI MOTOR AMERICA CORPORATION, a foreign for-profit corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.  This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet Website for services to order and secure information about Defendant's dealers online and their physical location.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein occurred in the Southern District of Florida.

4.      Plaintiff EDDIE I. SIERRA is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times has been hearing disabled in that he suffers from profound sensorineural hearing loss, a permanent disease and medical condition that substantially and significantly impairs his ability to hear. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, hearing every day sounds and accurately understanding his world. As such, he is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. §3602(h).

6.      Because he is hearing disabled, Plaintiff cannot use his computer to view and comprehend all video content on websites without the assistance of appropriate and available closed captioning.

7.      Defendant is a foreign for-profit corporation authorized to do business and doing business in the State of Florida. Defendant owns and operates a nationwide chain of automobile and car accessories dealerships. Defendant offers for sale and sells cars, spare parts, tools, and equipment, and also offers maintenance, repair, and auto financing, including at its dealership location Plaintiff intended to patronize at 2001 NE 2nd Avenue, Miami, Florida.

8.      Plaintiff's hearing disability limits him in the performance of major life activities, including hearing, and he requires assistive technologies, auxiliary aids and services for effective communication like hearing aids, IP Relay Service, text messages, closed captioning, and instant messages communication in connection with the use of his computer.

9.      Plaintiff frequently accesses the internet.  Because he is significantly and permanently hearing disabled, in order to effectively communicate and comprehend information available on the internet and thereby access and comprehend video content on company websites, Plaintiff requires that the websites contain commercially available closed captioning for the video content on various websites.  Plaintiff also requires the use of assistive technologies, auxiliary aids and other services for effective communication, including IP Relay Service, text messages, and instant messages communication in connection with the use of his computer.

10.     At all times material hereto, Defendant was and still is an organization that owns and operates a chain of cars and automotive accessories and service dealerships under the brand name "Hyundai". Each Hyundai dealership is open to the public.  As the owner and operator of these  dealerships, Defendant is defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery dealer, clothing dealer, hardware dealer, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     Because Defendant is an automotive dealer open to the public, each of Defendant's physical dealerships is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     Defendant controls, maintains, and/or operates an adjunct website called www.hyundaiusa.com (hereinafter "Website").  One of the functions of the Website is to provide the public information on the various locations of Defendant's dealers that sell its merchandise throughout the United States and within the State of Florida.  Defendant also sells to the public its merchandise and goods through the Website.

13.     The Website also services Defendant's physical dealerships by providing information and a live video feed on its available products and branded merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.     Because the Website allows the public the ability to locate Defendant's physical dealerships, search for car inventory, compare car prices, schedule a test drive, request a quote, apply for credit, purchase merchandise from Defendant that is also available for purchase at the physical dealerships, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical dealerships, the Website is an extension of, and gateway to, Defendant's physical dealerships.  By this nexus, the Website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its brick and mortar locations and businesses.

15.     Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at the physical dealerships, search for car inventory, compare car prices, schedule a test drive, request a quote, apply for credit, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical dealerships, the Website is an extension of, and gateway to, the physical dealerships, which are places of public accommodation pursuant to the ADA, 42 U.S.C. § 12181(7)(E).  As such, the Website is an intangible service, privilege and advantage of Defendant's brick and mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with hearing disabilities, and must not deny those individuals the same full and equal enjoyment of the services,

4

privileges and advantages afforded to the non-disabled general public both online and in its physical dealerships.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the Website.  Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege and advantage of Defendant's brick and mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with hearing disabilities, and must not deny those individuals the full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both online and at the physical dealer.  As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17.     Plaintiff is and has been a customer of Defendant who is interested in patronizing, and intends to patronize, Defendant's physical dealerships (including the dealership located at 925 North State Road 7, Fort Lauderdale, Florida) and search for other brick and mortar locations, check hours of operation, search the car inventory, compare car prices, schedule a test drive, request a quote, apply for credit, purchase merchandise from Defendant that is also available for purchase at the physical dealerships, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the Website or in Defendant's physical dealerships.

18.     The opportunity to shop and pre-shop Defendant's merchandise, to learn about Defendant's merchandise through viewing its merchandise, and to sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical dealerships from his home are important accommodations for Plaintiff because traveling outside of his home as a hearing disabled individual is often difficult, hazardous, frightening, frustrating and confusing

experience. Defendant has not provided its business information and Website video content in any other digital format that is accessible for use by deaf and hearing-impaired individuals who regularly use and rely up0on closed captioning.

19. Like many consumers, Plaintiff accesses numerous websites at a time to compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20. During the month of August 2019, Plaintiff attempted on a number of occasions to communicate with Defendant and utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, and with the intent to making a purchase through the Website or at one of the Defendant's dealers.

21. Plaintiff utilizes the closed captioning option for video content that allows individuals who are hearing disabled to fully access and communicate with websites. Plaintiff also utilized commercially available IP Relay service to communicate with places he patronizes or intends to patronize. However, Defendant's Website contains access barriers that prevents free and full use by hearing disabled individuals using keyboards and available closed captioning, specifically:

      a.    Video content with no closed captioning;

      b.    Video content with captioning that was incomplete, inaccurate or nonsensical; and

      c.    Video content with captioning that contains inaccurate or missing punctuation.

22.     The Website also lacks prompting information and accommodations necessary to allow hearing disabled individuals who use closed captioning and IP Relay to locate and accurately interpret the information provided online to purchase Defendant's merchandise from the Website.

23.     Plaintiff attempted to locate an accessibility notice or policy on the Website, which would direct him to a webpage with contact information for disabled individuals who have questions and concerns or are having difficulties communicating with the Website. However, Plaintiff was unable to do so because no such policy was visible to Plaintiff. When the phone number listed on the website was called, the person responding for Defendant, advised Plaintiff to send a message through the website. The only link to do so was found was the "Contact Us" link, https://owners.hyundaiusa.com/us/en/contact-us.html. On August 8, 2019, Plaintiff sent a message via that link requesting assistance and only an automated response email was received providing Plaintiff with a case number for reference. Plaintiff was also unable to locate on the Website a phone number for him to contact Defendant via an IP Relay Service for individuals with hearing impairments such as Plaintiff.

24.     The fact that Plaintiff could not communicate with or within the Website or with Defendant left him feeling excluded, as he is unable to participate in the same online computer shopping experience, with access to the information, merchandise, sales, discounts, and promotions as provided at the Website and for use in the physical locations as the non-hearing disabled public.

25.     Plaintiff desires and intends to patronize Defendant's physical dealerships and use the Website but is unable to fully do so as he is unable to effectively communicate with Defendant due to his severe hearing disability and Defendant's Website's access barriers. Thus, Plaintiff, as well as others who are deaf or with hearing or visual disabilities, will suffer continuous and

ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's retail dealerships and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's retail dealerships for its operation and use, the Website is an intangible service, privilege and advantage of Defendant's brick and mortar dealerships that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both online and at the physical locations, which are places of public accommodations subject to the requirements of the ADA.

27.     On information and belief, Defendant has not initiated a proper and effective Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities or provided an IP Relay number for hearing impaired individuals to communicate with Defendant.

28.     On information and belief, Defendant has not instituted a proper and effective Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

29.     On information and belief, Defendant has not designated a proper and effective employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a proper and effective Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a proper and effective User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a proper and effective Bug Fix Priority Policy.

33.     On information and belief, Defendant has not instituted a proper and effective Automated Web Accessibility Testing program.

34.     On information and belief, Defendant has not created and instituted a proper and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the hearing disabled.

35.     On information and belief, Defendant has not created and instituted on the Website a page a proper and effective method for individuals with disabilities, nor displayed a link and information hotline, nor created a proper and effective information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the hearing disabled or deaf community.

36.     On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG 2.0") 2.0 Level AA or higher of web accessibility. The international website standards organization, W3C, has published widely accepted guidelines ("WCAG 2.0 AA") for making video content accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice, the Federal Courts and adopted by the United States Access Board, an independent federal agency that promotes equality for people with disabilities, as the standard for the federal government.

37.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to hearing disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website online from their homes.

38.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the Website, in contravention of the ADA.

39.     For this, public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

40.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the Website.

41.     On information and belief, Defendant is, and at all times has been, aware of the barriers to effective communication within the Website which prevent individuals with disabilities who are hearing disabled from the means to comprehend information presented therein.

42.     On information and belief, Defendant is aware of the need to provide proper and effective full access to all visitors to the Website.

43.      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with disabilities who are hearing disabled, including Plaintiff.

44.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means

to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

45.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

46.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

48.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

49.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the Website, as defined within §12181(7)(E) and is subject to the ADA.

50.     Pursuant to 42 U.S.C. §12182, no individual shall be discriminated against by reason of such  disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

51.     Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate Defendant's physical dealers, search for cars inventory, compare cars prices, schedule a test drive, request a quote, apply for credit, purchase merchandise from Defendant that is also available for purchase at the  physical dealers, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical dealers.  The Website thus is an extension of, gateway to,

and intangible service, privilege and advantage of Defendant's physical dealers. Further, the Website also serves to augment Defendant's physical dealers by providing the public information on the various physical locations of the dealers and by educating the public as to Defendant's available merchandise sold through the Website and at the physical dealers.

52.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55.     Defendant's Website must comply with the ADA, but it is not, as specifically alleged hereinabove and below.

56.     Because of the inaccessibility of the Website, individuals with disabilities who are hearing disabled are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its Website, and at the physical location and/or place of public accommodation, in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

57.     Defendant has failed to provide auxiliary aids and services for the video content referenced in ¶21 above, including but not limited to "qualified interpreters on-site or through video remote interpreting (VRI) services; note takers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones, videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 35.104.

58.     The Website was also subsequently visited by Plaintiff's web expert Robert D. Moody, in August 2019, and the web expert determination was that the same access barrier that Plaintiff had initially encountered existed as of that date.  Despite Defendant being a defendant in prior ADA accessibility lawsuits, which likely resulted in confidential settlements that obligated Defendant to remediate the Website, Defendant has made insufficient material changes or improvements to the Website to enable its full use, enjoyment and accessibility for hearing disabled persons such as Plaintiff since the time Plaintiff first tried to access the Website in August

2019.  While the Website videos provided a telephone number for customer service, that service did not resolve the problem but only advised to report the accessibility problem sending a web message through a provided link. Defendant never actually substantively returned the message nor resolved the accessibility issue for Plaintiff. Thus, closed captioning still could not be accessed by and continued to be a barrier to all hearing disabled persons, including Plaintiff. The Website is and continues to be not fully accessible to users who are deaf and hearing disabled, including, but not limited to, having the following access barrier:

> a. The videos have inconsistent captioning.

*See*, Expert Declaration and Curriculum Vitae of Robert D. Moody, attached as Composite Exhibit "A".

59.     A video capture of the video content at issue with the Website was also reviewed by Plaintiff's captioning expert, Tanya Ward English, who prior to executing a sworn declaration, performed an independent review of the Website. Plaintiff's captioning expert concluded that the issues claimed by Plaintiff do in fact exist and that Defendant is not in compliance with WCAG 2.0 and 2.1. These barriers are pervasive and include, but are not limited to the following:

> a.     Videos content with no captioning;
>
> b.     Video content with captioning that was incomplete, inaccurate or nonsensical;
>
> c.     Video content with captioning that contained inaccurate or missing punctuation.

*See*, Expert Declaration and Curriculum Vitae of Tanya Ward English, attached as Composite Exhibit "B".

60.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

61.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

62.     These are readily available, well established guidelines on the internet for making Websites accessible to the deaf and hearing disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would  neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

63.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals, such as Plaintiff, with hearing or other disabilities who requires the assistance of interface with closed captioning and screen reading to comprehend and access internet websites.  This violation within the Website is ongoing.

64.     The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

65.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "assistive listening system, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(1) specifically states that closed captioning is an effective method of delivering material available to individuals who are deaf or hard of hearing.

66.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided

in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

67.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

68.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

69.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick and mortar physical dealers locations, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendant's Website and physical dealers.

70.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

71.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)  Require Defendant to adopt and implement a proper and effective web accessibility policy to make publicly available and directly link from the homepage of the Website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by hearing disabled users, and during that time period prior to the Website's being readily accessible, to provide an alternative methods (such as an IP Relay Service contact information) for individuals with hearing disabilities to be able to contact Defendant and access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with hearing impairments will be able to effectively communicate with Defendant and the Website for purposes of viewing and locating Defendant's physical dealers and locations, and becoming informed of and purchasing Defendant's merchandise online, and during that time period prior to the Website's being designed to permit individuals with hearing disabilities to effectively communicate, to provide an alternative method for individuals with hearing disabilities to effectively communicate with Defendant for such goods and services made available to the general public through the Website and in its physical locations.

72.     Plaintiff is entitled to recover his reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.  A declaration that Defendant's Website and Defendant's practices and omissions are in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to effectively update the Website, and continue to monitor and update the Website (on an ongoing basis), to remove barriers and add proper and effective closed captioning on all video content on its Website and include alternative ways to access images or visual information (e.g., graphs, charts, animations, or URLs on slides), such as audio description, alternative text, PDF files, or Word documents, in order for individuals with hearing and other visual disabilities to be able to access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant to develop and implement procedures to ensure that their online content conforms to the generally accepted accessibility technical standards, (to the extent necessary) so that individuals with vision, hearing and manual disabilities can acquire the same information, engage in the same interactions, and enjoy the same services as individuals without disabilities with substantially equivalent ease of use

D. An Order requiring Defendant to develop and implement procedures to ensure that Defendant's content on the Website or YouTube channel or videos conforms to the to the generally accepted accessibility technical standards, to the extent necessary so that individuals with vision, hearing, and manual disabilities can acquire the same information, engage in the same interactions, and enjoy the same services as individuals without disabilities with substantially equivalent ease of use.

E. An Order requiring Defendant to develop and implement procedures to ensure that Defendants Website content on their Website, iTunes, Instagram, Facebook, Twitter, Snapchat, LinkedIn, Tiktok, or YouTube platform conforms to generally accepted accessibility technical standards (to the extent necessary) so that individuals with

18

vision, hearing, and manual disabilities can acquire the same information, engage in the same interactions, and enjoy the same services as individuals without disabilities with substantially equivalent ease of use.

F.  An Order requiring Defendant to develop effective mechanisms and implement effective procedures for Defendant to solicit, receive and respond to feedback regarding any barriers to access to the online content on their Website, iTunes, Instagram, Facebook, Twitter, Snapchat, LinkedIn, Tiktok, or YouTube channels or platform, as well as feedback on how to improve the accessibility of that content.

G.  An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, provide a IP Relay Service contact information and other relevant facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

H.  An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a proper and effective website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

I.  An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow

---



[1]

Defendant to undertake and complete corrective procedures to its Website, policies, practices and procedures;

J.  An Order directing Defendant, by a date certain, to establish a proper and effective policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are hearing disabled and provide an IP Relay Service contact information;

K.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the hearing and visually disabled;

L.  An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

M.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct proper and effective automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

N.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and

shall accompany the public policy statement with an accessible means of submitting

accessibility questions and problems;

O.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

P.  Such other and further relief as the Court deems just and equitable.

DATED:  November 11th, 2019.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com

By____*s/ Roderick V. Hannah*____
       RODERICK V. HANNAH
       Fla. Bar No. 435384

By ____*s/ Pelayo M. Duran*_____
       PELAYO M. DURAN
       Fla. Bar No. 0146595